KNOLL, J.,
dissenting.
| n This Court has repeatedly recognized the great deference accorded to the factual findings of the trier of fact. Yet, affording these findings deference is not equivalent to rubberstamping them. Our duty to review these findings “is riot completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court....” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Rather, our duty is to review these findings in light of the entire record to determine whether the trial court committed manifest error. See id. After reviewing the entire record in this case, including the trial judge’s grossly inconsistent Reasons for Judgment, I can only conclude, as the Court of Appeal correctly did, the trial court committed manifest error in assigning forty percent liability to the plaintiff. For this reason, I respectfully dissent from the majority’s decision reinstating the District Court’s clearly erroneous judgment of liability, and I would affirm the Court of Appeal’s judgment finding defendant one hundred percent liable for the collision.
The District Court’s assignment of liability in this case is particularly puzzling because by finding “the left side of the school bus was encroaching over the center of the road, and was partly in the plaintiff’s lane” the trial judge evidently *930 rejected the only two pieces of evidence which could have supported a finding the plaintiff was partially at fault — that is, (1) Ms. Lashley’s testimony that | ¿plaintiff was driving in the center of the road and the impact happened in Ms. Lashley’s lane and (2) John Graves’ testimony he saw skid marks in Ms. Lashley’s imaginary lane of travel. Because the District Court’s Reasons for Judgment are so internally inconsistent, however, I will assume the court credited this testimony in arriving at its determination plaintiff was forty percent at fault.
This dissent is based on the objective record evidence. While I am not relying on the trial court’s Reasons for Judgment, I feel compelled to point out one egregious error to demonstrate the trial court’s flawed reasoning which renders its judgment unreliable. In its Reasons, the trial court cited “conflicting testimony regarding the moments before the collision.” Specifically, the trial judge recalled, “Plaintiff testified that defendant was looking down while defendant maintains that she attempted to alert the other vehicle by repeatedly honking her horn.” Plaintiff did testify Ms. Lashley was looking down immediately prior to impact. This testimony was corroborated by plaintiffs passenger, Ms. Thomisee, and by Trooper Hataway and Mr. Daniel Groom, both of whom testified they heard Ms. Lashley admit at the scene of the accident that she was looking down immediately prior to impact. Significantly, nowhere in the record before us, however, does Ms. Lashley testify she had attempted to alert the plaintiff by repeatedly honking her horn. Indeed, the trial court’s misconception is in direct conflict with Ms. Lashley’s actual testimony she did not brake until impact.
Reviewing courts may find manifest error “[wjhere documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story.” Rosell, 549 So.2d at 844. Here, both objective evidence and internal inconsistencies in Ms. Lashley’s testimony belie the trial court’s judgment of liability.
IsDuring the bench trial, the District Court admitted a number of pictures depicting the damage to plaintiffs vehicle. These pictures which show the plaintiffs vehicle only sustained damage to its left fender objectively support plaintiffs story she was attempting evasive action at the time of the accident. More importantly, the photographs contradict Ms. Lashley’s testimony plaintiff was driving in the center of the road and the impact happened in Ms. Lashley’s lane. Given the size of the bus, if the accident happened in Ms. Lash-ley’s lane, more of the front of plaintiffs car would be damaged and not just the left fender. This conclusion is supported by the opinion of the expert in accident investigation, Trooper Mike Hataway — the only expert witness to testify at the liability stage of the trial — who opined based on the debris and the skid marks he observed at the scene that the point of impact was in plaintiffs lane and plaintiff was attempting evasive action at the time of impact.[1]
The record reveals Ms. Lashley’s testimony is also internally inconsistent and, perhaps, given in bad faith. Although Ms. Lashley admits she did not apply her brakes prior to impact, she testified plaintiff was traveling in the center of the road *931 immediately before the collision and the point of impact was in Ms. Lashley’s lane of travel. However, she also admits the final resting place of the vehicles — including over half of her bus — was in plaintiffs lane of travel. Her further testimony the vehicles slid into the other lane following the collision because plaintiffs vehicle “was pushing against my tire” is simply implausible. Moreover, the record testimony of the plaintiff, her passenger, and two independent witnesses — all of which is consistent with Ms. Lashley’s testimony she did not apply breaks until impact — strongly suggest Ms. Lashley, an employee of co-defendant Grant Parish School Board (“GSB”), altered her story after she left the |4scene of the accident. Plaintiff testified Ms. Lashley was looking down prior to the collision. Ms. Thomisee, her passenger, corroborates this story and testified Ms. Lashley apologized to them at the scene. Trooper Hataway testified he spoke with Ms. Lashley after the accident and Ms. Lashley admitted she was looking down at her gauges immediately before impact.[2] Mr. Daniel Groom, who was at the scene of the accident, also testified he heard Ms. Lashley say she had dropped some papers and was looking down at the time of the collision. Given this testimony and Ms. Lashley’s employment with GSB, it is highly likely Ms. Lashley felt pressured to change her story and to deny what the plaintiff and the plaintiffs passenger said she did and what two independent witnesses testified she admitted to doing at the scene of the accident — that is, looking down immediately prior to colliding with Ms. Purvis’ vehicle.
Ms. Lashley’s admission she did not brake prior to her impact with the plaintiffs vehicle contradicts Mr. Graves’ testimony he saw skid marks in Ms. Lashley’s imaginary lane of travel. Further, not only does the physical evidence Trooper Hataway observed support Ms. Lashley’s testimony that she did not brake prior to impact, but it also reveals the plaintiff did brake and attempt, to drive onto the shoulder to avoid the accident. As Trooper Hataway explained skid marks are caused by braking, as opposed to yaw marks which are “made when a vehicle swerves at a high rate of speed and the tires make marks in the roadway because they’re actually skidding rather than stopping.” While Trooper Hataway found no marks of any kind from Ms. Lashley’s bus, he found skid marks from plaintiffs vehicle in plaintiffs imaginary lane of travel indicating she tried to brake before impact and tried to drive off the roadway to avoid the collision. Mr. Daniel Groom’s testimony he observed debris in plaintiffs lane of travel also supports Trooper Hataway’s expert opinion.
1 ¡-Accordingly, I respectfully dissent and would affirm the Court of Appeal’s judgment in its entirety.

. Although Trooper Hataway admits the diagram of the scene contained in his accident report was erroneous (the diagram shows damage to the bus' right fender, rather than its left fender), he testified this was the only error in his report. In all other respects, his report and his testimony are reliable.

. Ultimately, Trooper Hataway issued Ms. Lashley a traffic citation for driving "left of center,” though she was never convicted of this offense.